**Wysonga McGLOTHLIN, Appellant,**

v.

**James R. CULLINGTON, Appellee.**

No. 03–98–00205–CV.

Court of Appeals of Texas,
Austin.

April 1, 1999.

J. Ray Riley, Houston, for appellant.

Fred E. Davis, Davis & Davis, P.C., Austin, for appellee.

Before Justices JONES, KIDD and POWERS.*

MACK KIDD, Justice.

Wysonga McGlothlin, appellant, appeals the trial court's dismissal for want of prosecution of her medical negligence claim against Dr. James Cullington, appellee. We will affirm.

## BACKGROUND

The resolution of this case depends largely upon the statutory requirements of the Texas Medical Liability and Insurance Improvement Act (the "Act"); [1] accordingly, a brief summary of the facts should prove sufficient. As a result of a malignant tumor, Ms. McGlothlin, in two surgical procedures per-

---

* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. See Tex.Rev.Civ. Stat. Ann. art. 4590i (West Supp.1999).

formed by physicians not a party to this suit, had breast tissue removed from and a breast implant inserted into her right breast. After the surgery, Ms. McGlothlin experienced swelling around her right breast and under her arm, and it was necessary that the liquid causing the swelling be aspirated regularly. During this recovery period, Ms. McGlothlin's regular surgeon temporarily left town and referred Ms. McGlothlin to a colleague, Dr. Cullington. During the visit, Dr. Cullington, while attempting to aspirate Ms. McGlothlin's swollen breast, allegedly punctured her breast implant, causing the breast to flatten, which necessitated further reconstructive surgery. Ms. McGlothlin filed suit against Dr. Cullington on February 18, 1997.

The Act requires Ms. McGlothlin, as plaintiff in a medical malpractice lawsuit, to comply with a number of prerequisites in order to preserve her claim. The substance of this dispute concerns the specific requirements of section 13.01,[2] the relevant portions of which provide:

> (a) In a health care liability claim, a claimant *shall,* not later than the 90th day after the date the claim is filed:
>
> (1) file a separate *cost bond in the amount of $5,000* for each physician or health care provider named by the claimant in the action;
>
> (2) place *cash in an escrow account in the amount of $5,000* for each physician or health care provider named in the action; *or*
>
> (3) *file an expert report* for each physician or health care provider with respect to whom a cost bond has not been filed and cash in lieu of the bond has not been deposited under Subdivision (1) or (2) of this subsection.

Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(a) (West Supp.1999) (emphasis added). Should a plaintiff fail to comply with one of the listed requirements in section 13.01(a), the court *shall* enter an order that:

> (1) requires the filing of a $7,500 cost bond with respect to the physician or health care provider not later than the 21st day after the date of the order; *and*
>
> (2) provides that if the claimant fails to comply with the order, *the action shall be dismissed for want of prosecution. . . .*

*Id.* (b)(1), (2) (emphasis added).

On April 1, 1997, forty-two days after Ms. McGlothlin filed her lawsuit, the Texas Commissioner of Insurance found Dr. Cullington's insurance carrier, who was responsible for his defense, to be impaired, and the suit was automatically stayed for six months.[3] Ninety days after the automatic six-month stay lapsed, on January 30, 1998, Dr. Cullington filed a motion to increase security pursuant to the Act asking the trial court to compel Ms. McGlothlin to file a $7,500 cost bond, or to dismiss the case in the event the bond was not filed. Ms. McGlothlin, in a response to Dr. Cullington's motion filed on February 26, 1998, claimed by affidavit that she lacked the financial ability to either pay the cost bond or, alternatively, to retain an expert to provide an expert report on causation.[4] On March 12, 1998, the court rendered an order compelling Ms. McGlothlin to file a $7,500 cost bond within twenty-one days. When no cost bond was filed, the court rendered an order on April 13, 1998 dismissing the cause for want of prosecution. Because Ms. McGlothlin failed to comply with the requirements of section 13.01(a) and (b), the court had no discretion but to dismiss her claim pursuant to the statute. Ms. McGlothlin appeals, arguing that the requirements of section 13.01 of the Act (1) violate the Due Process clause of the United States Constitution, (2) violate the Open Courts Guarantee of the Texas Constitution, and (3) act as a "special law" in violation of Article II, Section

---

**2.** *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01 (West Supp.1999).

**3.** *See* Tex. Ins.Code Ann. art. 21.28–C, § 17 (West Supp.1999).

**4.** Ms. McGlothlin states in her affidavit:

> It is my understanding such an expert report would have to be a physician because Dr. Cullington, the defendant in this case, is a physician. *It is my further understanding, based upon information from my attorney, that an expert physician would likely require that I pay him a retainer of at least $2,000.00 in order to engage the expert and obtain a liability report from him.* I do not have the financial ability to pay such a large sum of money and therefore could not obtain an expert's report.

56, of the Texas Constitution. We do not address whether the trial court's dismissal was error, but whether the statute, as applied to Ms. McGlothlin, is unconstitutional.

## DISCUSSION

▉▉ We begin by noting that a statute is presumed constitutional. *See Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 934 (Tex.1996). The wisdom or expediency of a law is for the legislature to determine, not this Court. *See id.* Furthermore, the party challenging the constitutionality of a statute bears the burden of demonstrating that the enactment fails to meet constitutional requirements. *Id.*

### Due Process

▉▉ Ms. McGlothlin initially contends that the cost bond and expert report requirements of article 4590i, section 13.01 violate the due process protections of the United States and Texas constitutions. *See* U.S. Const. amend. XIV; Tex. Const. art. I, § 13, art. III, § 56. Ms. McGlothlin argues that her due process rights were violated because she was not able to pursue her injury claim due to the onerous cost bond and expert report requirements of section 13.01; therefore, the statute unconstitutionally restricted the initiation of her medical malpractice claim.[5] When determining whether a statute denies a constitutional right to a litigant, we analyze the statute using the criteria established by *Sax v. Votteler*, 648 S.W.2d 661 (Tex.1983). *Sax* sets out a two-part test: (1) the litigant must show that a cognizable common-law cause of action is being restricted; and (2) the litigant must show that the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute. *Sax*, 648 S.W.2d at 666.

Negligent infliction of injury by a medical practitioner is an undisputed cause of action under Texas common law. *See Humphreys v. Roberson*, 125 Tex. 558, 83 S.W.2d 311 (1935); *Bowles v. Bourdon*, 213 S.W.2d 713 (Tex.Civ.App.—Galveston 1948), *aff'd*, 148 Tex. 1, 219 S.W.2d 779 (1949). Thus, the constitutionality of the cost bond and expert report provisions turns on whether these requirements are unreasonable and arbitrary when balanced against the purposes of the Act.

Passed in 1977, the original Act sought to address what the legislature described as "a medical malpractice insurance crisis in the State of Texas." *See* Medical Liability and Insurance Improvement Act, 65th Leg., R.S., ch. 817, § 1.02(a)(5), 1977 Tex. Gen. Laws 2040 (Tex.Rev.Civ. Stat. Ann. art. 4590i, since amended). The legislature added section 13.01 to the Act in 1993. *See* Act of May 25, 1993, 73d Leg., R.S., ch. 625, § 3, 1993 Tex. Gen. Laws 2347–49 (Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01, since amended).[6] The cost bond and expert report provisions of section 13.01 were enacted "to address the perceived problem that litigants were filing unmeritorious claims against medical practitioners which were not adequately investigated in a timely manner. This ... led doctors to settle such suits, regardless of the merits, and also to expend great amounts of money on defending against ultimately 'frivolous claims.'" *Horsley–Layman v. Angeles*, 968 S.W.2d 533, 537 (Tex.App.—Texarkana 1998, no pet) (citing House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 971, 74th Leg., R.S. (1995)). Thus, the legislature sought to address the important purposes of (1) keeping down medical insurance costs, and thus health care costs, by reducing frivolous medical malpractice claims, and (2) allowing a defendant physician to recoup some portion of court costs from a successful defense.

5. We will discuss Ms. McGlothlin's due process challenges under the Texas and United States constitutions together, as our analysis is dispositive of both points.

6. In its original form, entitled **Affidavit or Cost Bond**, section 13.01 required the affidavit of the plaintiff or plaintiff's counsel attesting to an obtained written opinion of an expert to be filed within ninety days of the commencement of the

action, or, in the alternative, a $2,000 cost bond. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(a), (b) (West Supp.1999). Should the plaintiff fail to comply with either of these alternatives, the cost bond, upon motion, would be increased to $4,000; should another thirty days pass without the filing of an expert report or the $4,000 cost bond, the action must be dismissed by the court without prejudice. *Id.* § 13.01(c).

The question for this Court is whether section 13.01 constitutes an unreasonable and arbitrary means to achieve these purposes.

Dr. Cullington relies upon two cases for the proposition that the *Sax* balancing test favors the constitutionality of the cost bond and expert report requirements of section 13.01. *See Horsley–Layman v. Angeles*, 968 S.W.2d 533 (Tex.App.—Texarkana 1998, no writ); *Odak v. Arlington Memorial Hosp.*, 934 S.W.2d 868 (Tex.App.—Fort Worth 1996, writ denied). Both *Horsley–Layman* and *Odak* addressed and upheld the constitutionality of section 13.01 as it existed under the 1993 statute. *See Horsley–Layman*, 968 S.W.2d at 537; *Odak*, 934 S.W.2d at 872.

The *Horsley–Layman* court focused on the lack of evidence indicating why the requirements of a cost bond or expert report would result in an unreasonable financial burden above the costs of a medical malpractice claim in general. *See Horsley–Layman*, 968 S.W.2d at 537. The court noted that the appellants "never asserted that the appellants failed to file an expert report as to Dr. Angeles because they did not have the financial resources to procure such a report." *Id.* The *Odak* court, in overruling appellant's Open Courts challenge, also focused on the lack of any evidence that the options presented the plaintiff in initiating her malpractice claim under section 13.01 were unreasonable or arbitrary. *See Odak*, 934 S.W.2d at 872. The court stated "[I]f the expense of obtaining an expert report is too prohibitive for both the claimant and the attorney, they will be unable to pursue a claim requiring expert testimony regardless of whether they file the affidavit."[7] *Id.* However, as mentioned, both *Horsley–Layman* and *Odak* upheld the constitutionality of the 1993 statute when section 13.01 required only a $2,000 cost bond or affidavit by the attorney.[8] In doing so, *Odak* specifically states "were the bond set at an arbitrary, unreasonably high amount, our

analysis might be different." *Odak*, 934 S.W.2d at 872. Because the requirements of section 13.01 have been heightened by the legislature, we will examine the Open Courts challenge to section 13.01 in its present form.

### The Texas Open Courts Guarantee

Article I, section 13 of the Texas constitution provides:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. *All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.*

Tex. Const. art. I, § 13 (emphasis added). This clause, commonly referred to as the "Open Courts Guarantee," acts as an additional due process guarantee granted in the Texas constitution, prohibiting legislative bodies from arbitrarily withdrawing all legal remedies from anyone having a well-defined cause of action under the common law. *See Sax*, 648 S.W.2d at 664. Texas courts have zealously guarded the rights of litigants to pursue their claims in court. *See* 12A Tex. Jur.3d *Constitutional Law* § 171, 172 (1986) (listing cases invalidating statutes that violate the Open Courts Guarantee). The right to bring a well-established common law cause of action cannot be effectively abrogated by the legislature absent a showing that the legislative basis for the statute outweighs the denial of the constitutionally guaranteed right to redress. In applying the test, we consider both the general purpose of the statute and the extent to which the litigant's right to redress is affected. *Sax*, 648 S.W.2d at 666.

In examining section 13.01 according to these standards, we first note that the statute offers litigants two means of preserving a malpractice claim: (1) a cost bond or cash deposit; or (2) an expert report.[9] The re-

---

**7.** Texas law has traditionally required expert testimony to establish causation in medical malpractice actions. *See Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex.1965) (in all medical malpractice claims, negligence and proximate cause must be proven by expert testimony).

**8.** *See note 6, infra.*

**9.** Section 13.01 defines "expert report" as a

written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relation-

quired amount of the cost bond significantly increased in 1995, more than doubling. Moreover, the 1995 statute now requires an actual expert report rather than a mere affidavit stating that a written expert opinion has been procured. However, we do not reach an analysis of the constitutionality of the new section 13.01 because Ms. McGlothlin has failed to provide sufficient evidence that these requirements actually acted to keep her from pursuing her claim, as was her burden. *See Enron Corp.*, 922 S.W.2d at 934.

Ms. McGlothlin gives no reason in the record for not complying with the Act within the initial 90 days after filing suit.[10] We thus have no indication that Ms. McGlothlin ever attempted to comply with the statute. She claims by affidavit that, "based upon information from my attorney," experts require a $2,000 retainer to furnish a report. This is, of course, hearsay, and no evidence that a $2,000 threshold actually exists. The statute clearly implies the expert report is but a minimal requirement, and includes numerous allowances for plaintiffs filing an expert report.[11] Finally, the affidavit makes no mention of any actual attempt to obtain an expert report, only some perceived financial barrier. Ms. McGlothlin's failure to comply could be due as much to oversight or mistake as to actual financial inability. Accordingly, Ms. McGlothlin's affidavit is wholly insufficient to establish proof that section 13.01 is unconstitutional as applied to her. We overrule her due process challenges.

*Special Law*

Ms. McGlothlin additionally claims that section 13.01 violates article III, section 56 of the Texas constitution, which states "in all other cases where a general law can be made applicable, no local or special law shall be enacted." Tex. Const. art. III, § 56. She contends that section 13.01 creates a separate class of physicians protected from suit by section 13.01. A statute is not special or local if it operates on a subject in which people at large are interested. *See Langdeau v. Bouknight*, 162 Tex. 42, 344 S.W.2d 435, 441 (1961). Having already discussed the important state interests addressed by the legislature in the Act, we find this point to be without merit.

## CONCLUSION

Because the record fails to reflect any evidence of Ms. McGlothlin's actual financial inability to comply with the requirements of section 13.01, she has not carried her burden of demonstrating that the statute fails to meet constitutional requirements. Moreover, because section 13.01 addresses the important state interest of containing medical malpractice insurance costs, it is not a special law under the Texas constitution. We overrule appellant's points of error and affirm the order of the trial court.

ship between that failure and the injury, harm, or damages claimed.
Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(r)(6) (West Supp.1999).

10. Ms. McGlothlin's affidavit claiming financial inability was filed on February 26, 1998, in response to Dr. Cullington's motion to increase security, more than one year after she originally brought suit. Thus, she was given substantially more than the statutory 90–day period in which to procure a report or file a cost bond.

11. Section 13.01 contains several subsections defining the nature and use of an "expert report," including:

Section 13.01(j): "[N]othing in this section shall be construed to require the filing of an expert report regarding any *issue other than* an issue relating to liability or causation."
Section 13.01(k): "[N]otwithstanding any other law, an expert report filed under this section: (1) is not admissible in evidence *by a defendant;* (2) shall not be used in a deposition, trial, or other proceeding; and (3) shall not be referred to *by a defendant* during the course of the action for any purpose."
Section 13.01(*l*): "[A] court shall grant a motion challenging the adequacy of an expert report *only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the definition of an expert report* in Subsection (r)(6) of this section."
Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(j), (k), (*l*) (West Supp.1999) (emphasis added).